Thank you. And if you could step forward and introduce yourselves. Hi, I'm Debra Noll for the appellant James Walker. Good morning. Assistant State's Attorney Christine Cook on behalf of the people. Thank you. All right. May it please the court. Illinois has a substantive due process claim of actual innocence. James Walker has consistently maintained that he was in Moments, Illinois, with his family at the time of the shooting. He's now presented newly discovered evidence which supports that claim. At this stage of proceedings, he's not required to prove his innocence. He's merely required to show that it's capable of being proved. What did he provide that shows that he was among the here? This evidence is additional evidence that he was in Moments. It's evidence that he was not at the shooting. So but that was decided at the trial. They said they didn't buy it. They didn't buy his alibi defense at trial. But this evidence is additional evidence that he was not the person who was identified as the shooter, which therefore supports his alibi evidence. What took 26 years for this to come forward? Or 27, whatever it is. He didn't know that the person, Tyrone Powell, was there. So there's no way to know that there was this additional witness who saw the shooting. How do we know when Mr. Horton found Mr. Pop? We know from the IDOC website that Mr. Powell was not that he was incarcerated around 2011 for a 2008 offense. And the affidavit says that Mr. Powell's affidavit says that Horton approached him in prison. So we know it wasn't before 2011. So if nobody knew that Mr. Powell was there, Mr. Horton, I guess, this approaches everybody in prison and asked them if they were there. Is that how would Mr. Horton know? I have no idea, Your Honor. Again, at this stage of proceedings, Mr. Walker is required to show that it's capable of being proved. He's not required to actually prove it. That's something that would happen at third stage proceedings. At this stage of proceedings, he's just required to show that it's capable of being proved. Leave to file, therefore, should have been granted because this petition and supporting documentation set forth a colorable claim of actual innocence that should be advanced for appointment of counsel. This colorable claim is supported by two affidavits. What does colorable mean in this context? How would you define it for us? Because it looks pretty pale to me. Well, again, it's something that shows that he could prove it once counsel is appointed. And it shows that it's worthy of appointment of counsel so that we can decide if there's enough to actually take it to a notary. Okay. And what kind of burden is on the defendant in terms of diligence and trying to specifically identify enough information to make this affidavit and this potential filing something that's colorable? Can you repeat that question? I don't really fully understand. Well, what I'm trying to figure out is what we have here is an affidavit that brings up the same stuff that he's tried to bring up on two other occasions, not to mention at trial and on direct appeal. And the thing that he's trying to bring up now is he's adding to it by saying that there's a fellow inmate who knows that there was somebody named Strickland. We don't even have a first name for Strickland. So, I mean, isn't there some burden on the defendant that should require that more information be given to make it something that is more colorable? I think at this stage of proceedings, he's just required to show that there's newly discovered evidence that couldn't have been discovered earlier that would have changed. That's the thing I'm questioning. Why couldn't it have been discovered earlier? Well, the situation is just like in Ortiz. We have a witness who could, since Walker wasn't there, according to where we're at right now at this early stage, there's no way that he could have known that someone was there who saw it and saw that it wasn't him. But that could be true in every single case that ever came before this Court. I mean, comparing this to Ortiz is a bit of a stretch. I mean, in Ortiz you had somebody who was there and who made himself very unavailable, getting out of state because he thought that they were coming to get him and that there would be gang retribution. I just don't see that there's anything here that even approaches that sort of distinctiveness. Well, first, in Ortiz we had an appeal from third stage proceedings. Here we're still at the leave to file stage. Secondly, it actually is the same. It's, yes, different factual circumstances, but it's the same thing where a person who saw the offense was not known to the defendant earlier. And so now that he's learned about it, even though ostensibly it may seem unbelievable, we have to presume it's truth unless it's actively rebutted by the record. And here there's nothing to rebut the truth of this. So just as in Ortiz, we have someone who was unknown to the defendant, who was an eyewitness to the offense, who identified the person as someone other than defendant. So for him to get through the door, he is shown enough to have counsel appointed who can then shape these claims into some sort of form that would, you know, overcome these technical difficulties that we have at this stage. He's not required to prove it now. I mean, that would require a burden that is actually more difficult than the third stage. Maybe a first name, you know, assuming Strickland is a last name. Maybe a first name. Can't we at least require that, you know, there's a full name so we know that there's at least some possibility that this person exists? I don't think so at this stage, Your Honor. I think that was something that needs to be addressed by an attorney at the second stage of proceedings. Excuse me. The Tyrone Powell document doesn't say that Strickland did it. It just says the defendant did not. Is that correct? There's no indication. So Tyrone doesn't have to know Strickland's first name and last name. Well, Horton probably knows it. We don't know if he does or not. Exactly. That's something that could be fleshed out at the third stage. But there's no burden on Tyrone to say who Strickland is because that's not what he's saying anyhow. Correct. Exactly, Your Honor. Tyrone's affidavit is, as we just discussed, I'm going to go through it real quickly, but newly discovered because Walker didn't know that Powell had witnessed the shooting. But he's just another witness. We had other witnesses to the shooting. All who saw this individual get out of the car described a lot better than this what the individual looked like. All here it says is a tall man. The other testimony, what facial features, what he was wearing, and the jury heard all that. So why isn't this just cumulative evidence? Because it's directly contradictory to the other evidence. This is evidence that Mr. Powell knew Mr. Walker, and he saw the shooter who the state's theory at trial was that the person who got out of the car was Walker. But we also have somebody at trial who said he knew Mr. Walker because his brother was the victim, one of the victims. So it just contradicts this additional testimony that contradicts what already the jury heard. It's additional eyewitness testimony that someone other than Walker committed the offense. And Andre Chalmers, his testimony was inconsistent. He said varying things about how long he'd known Mr. Walker. So the jury very well could find something different now that we have this new eyewitness who knew Walker, said that this person wasn't Walker, that directly contradicts Chalmers. And we also have Horton's affidavit in which we have recantations of both Chalmers and Pori's identifications of Walker. And all of this evidence is newly discovered because with Mr. Powell, there's no way that Mr. Walker could have known about him until 2011 when he was found in prison. However, that happened, we don't know. And it's material and non-cumulative because Powell's is a first person account that directly contradicts the state's evidence. And it would probably change the results on retrial where the state's evidence against Walker was nothing but eyewitness testimony, which is, Illinois has a shameful history of wrongful convictions, and faulty eyewitness testimony is the leading cause of wrongful convictions. So again, we're at this early stage where it's talking about leave to file. It's not, you know, we're barring him from even getting an attorney to try to shape these things, to deal with these problems. He's a pro se petitioner who's been in prison for, you know, over 25 years at this point. And Horton's affidavit is also newly discovered because the witnesses were afraid to come forward until Horton told them that Strickland was dead. And again, we need to take this as true at this stage of proceedings. But how can we take this through something we don't even know the man's first, maybe last name? We don't know. We don't know when he died, where he was, any of this. Maybe the due diligence, I mean, that could have, maybe Strickland died 20 years ago. We don't know. How can we determine due diligence here, as appears to Ortiz, which was very clear? Again, Ortiz was an appeal from third stage proceedings. Here we're just at the leave to file stage. So these are details that once counsel is appointed, counsel can flesh this out. Or if counsel is unable to flesh it out, perhaps it will be subject to a motion to dismiss. I don't know. At this stage, we just haven't even gotten through the door yet. And this is a constitutional right to bring this claim. So to say that he can't even get through the door is, I think, contrary to those principles that were enunciated in Washington. So where do you draw the line? I mean, asking the same question, Justice Lavin, I mean, are you saying that any time anybody raises an issue like this, it's how do we draw that line? When is it the gist of a constitutional claim? When is it? The line is drawn when someone fails to present newly discovered evidence that's material and non-cumulative and that wouldn't change the result on retrial. And here, he has presented affidavits which, under Ortiz, are sufficient to get him past that initial line. Sorry, I'm losing my place. So Dispatch Powell, Horton's affidavit is also newly discovered because the witnesses were afraid to come forward, and it would probably change the result on retrial because it's evidence that someone other than Walker committed the offense. It's also this possibility of another shooter, Strickland, wasn't actually fully litigated at trial. It was just mentioned. Andre Chalmers. Several times. Well, it was mentioned several times, but it was never gone into in any depth. Andre Chalmers denied telling Charles that Strickland shot his brother. Charles wasn't sure if he told police that Andre said Strickland did it, but he knew that someone said Strickland. And then when counsel was trying to question the officer about Parise's statement, the court sustained the objection. And then when the jury asked about whether this testimony had been stricken, the court refused to answer the question. So the jury didn't really have this was never fleshed out. So this question of Strickland has never really been litigated. To get through the door, yes, I understand what you're saying. We don't want to have frivolous petitions left and right, but he has presented evidence that should get him through that door. And for these reasons, this court should reverse and remand for second stage proceedings so that counsel could be appointed so that this can be litigated with the aid of counsel. And if this court has no further questions, I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. Thank you. May it please the court. Counsel, trust me, I'll tell you all about the details when we get to a third stage hearing. I'm not going to tell you anything now. We'll get to those nitty gritty details some other time. Excuse me, counsel, this was a pro se petition. Yes, it was. It was his third pro se petition. It was a pro se petition. Absolutely. He does not have benefit of counsel. No, he hasn't. But he does have the benefit of a paralegal, Mr. Horton. A prisoner. Yes. But, Justice, there are requirements that a defendant has to make. But I think you may be overreacting to this pro se petition. Well, I'm not overreacting to the defendant's claim, which is not that we're entitled to a second stage petition or hearing. We're entitled to a third stage hearing based on an absolutely unsupported claim. The unsupported claim is Mr. Horton's rank hearsay and inadmissible affidavit. He's not a witness to this crime. He doesn't know anything. And that's not a basis for a second stage PC hearing. It's not admissible under Brown. He has an inexplicable failure to submit the alleged recants. He's claiming he have recants from Mr. Chalmers and Mr. Poray. But he says in his own affidavit, I'll produce those later at a hearing. That's in his affidavit. I'm not overreacting. I'm reacting to the affidavit submitted by Mr. Horton. That's what he says in his own affidavit. I'm not going to give it to you now. I'll give it to you later at a hearing. Just trust me. They recanted. They recanted. How did they recant? In which way? Did you talk to them over the phone? Did they come to prison to visit you? And when? Because they were intimidated by this Mr. Strickland? Who is Strickland? Nobody came forward until Strickland died. When did he die? Has he been dead for 20 years? Did he die last week? This is absolutely insufficient to go to a second-stage hearing. This is almost offensive. It doesn't have any color, as Justice Lavin noted. If this is allowed to go to a second-stage hearing, there is no first-stage hearing anymore because you have absolutely nothing in which to submit it for a second-stage hearing. Horton never identifies Strickland or the date of his death. He fails to explain how he found Mr. Powell. And, in fact, his affidavit was dated in June of 2011, and is wholly silent as to any interaction with Mr. Powell, who signed his affidavit a year-and-a-half later. Now, here's Mr. Horton, apparently he will. Because they are in prison. It's not like they can go to Starbucks and have coffee. They're in the same prison, Your Honor. But it's still not like they can go to Starbucks and have coffee. I'm not saying they're going to Starbucks and have coffee. Their movements are controlled by other people who may or may not be hostile to what they're doing. My point being, Justice, is that Mr. Horton has spent 16 years detailing in his affidavit what he's done, who he's talked to, and the evidence he's uncovered. Nowhere in Mr. Horton's affidavit does he ever mention Mr. Powell. This is significant because Mr. Powell's affidavit is dated a year-and-a-half after Mr. Horton's affidavit. Mr. Powell, and it's not even an affidavit, it's a purported statement, says that he was approached by Mr. Horton. That is a very odd statement to make. How did Horton find out about Mr. Powell? If Mr. Horton, as Your Honor has noted, is so locked up and his movements are so restricted, how did Mr. Horton conduct an investigation from prison and find Mr. Powell, who's nowhere in the police reports, who's nowhere to be found and isn't coming forward? Well, how could the defendant have found him, you know, 20 years ago then? Exactly my point. How did Mr. Horton find him? If Mr. Horton is locked up and found him, how on a due diligence claim can the defendant meet that standard, that defense counsel didn't find Mr. Powell, that his first PC and second PC couldn't uncover Mr. Powell? If Mr. Horton could find him, somebody else could have found him too, and he can't meet a due diligence standard. Further, aside from the fact that Mr. Horton fails to explain that he's had any interaction with Mr. Powell because his affidavit is dated a year and a half earlier, Mr. Horton's affidavit is clearly rebutted by the record. Andre said that Strickland did it, and that whole Strickland claim presumes that when somebody, if somebody said Strickland did it, they meant as the actual shooter. Saying Strickland did it could mean a whole lot of things. It could mean that somebody named Strickland ordered the hit. It means that somebody named Strickland orchestrated or was the architecture of the hit, not necessarily that he was the shooter or the gunman, plus there were three people in the car. So this whole notion that Strickland did it is really an enormous red herring. We also know that Horton's affidavit is clearly rebutted by the record in many other respects. He claims that Mr. Poray told him that he and all the victims were out in the street getting drunk. Well, we know from the testimony that Mr. Poray was in the doorway of the tavern waiting for a ride to get picked up by his Navy buddy. He wasn't with the victims on the street corner. And we also know that Vicki and Rico tested negative for alcohol and opiates. So that's clearly contradicted by the record. Mr. Horton also gets it incorrect when he claims that Poray claims that he spoke to Chuck Murphy, an original defense counsel, and that he recanted to Murphy. We know from the record that Poray never spoke to Chuck Murphy. Chuck Murphy got a recant from Andre Chalmers, not Mr. Poray. Let me ask you something about the Powell statement. In the statement, it says, I had no idea that the defendant was wrongly convicted as a gunman until recently when paralegal Eugene Horton approached me with inquiries about the gunman. Now, what do you think about the fact that he says inquiries about the gunman? It's not inquiries about the incident. Right. Let's get to Mr. Powell's statement because it's not an affidavit. Okay? It's not notarized. We didn't really even know that Mr. Powell existed because it's not notarized. Be that as it may, he doesn't even indicate he saw a crime. I saw some tall African-American guy getting out of a white car and he shot a gun. Shot a gun? There's a triple murder in front of him. He didn't see three bodies? He's eating a burger in the McDonald's parking lot and he didn't notice there were three bodies after this shooting? There's no indication that Mr. Powell even saw a crime, much less this triple murder. It's wholly devoid of detail and as a matter of law, this court should not find that that suffices to move to a second stage hearing. It in no way exonerates the defendant. We know from both Andre Chalmers and Delphine Harp that there were different shooters. Andre Chalmers testified he heard several different gunshots going off from what he believed to be fired from two guns. Delphine Harp saw three men getting out of the car. There was testimony that there was probably more than one shooter. This is, at most, Mr. Powell's statement, which this court should not be considering as a matter of law, is completely insufficient to warrant second stage hearing. Further, there's no indication that Mr. Powell, unlike the defendant, as noted by Justice Levin, contrary to the witness in Ortiz, was unavailable. Again, in Ortiz, the witness, Mr. Hernandez, came forward. He went after the murder in Ortiz. Mr. Hernandez fled to Wisconsin and many years later returned, and Mr. Hernandez approached the defendant's mother telling him what he saw. The claims before you today are nothing like that. As a matter of fact, according to Mr. Powell's statement, he's approached by Mr. Horton. Again, how does Horton, who's in prison and isn't drinking coffee at Starbucks, how does this guy, who's in prison and has very little resources, how does he uncover Mr. Powell? Mr. Powell is obviously a very cooperative witness. There's nothing in his statement that would lead anybody to believe that he would not have been cooperative or that he wouldn't have come forward. He witnessed a shooting. We don't know what he witnessed. But what we do know is he didn't witness a triple murder. Further, there's no claim of intimidation by Strickland. What the defendant is trying to do with the affidavit by Mr. Horton and the statement by Mr. Powell is to bootstrap a lot of these insinuation and innuendos and then claim, trust me, that's enough. We'll get to the details later in a third stage hearing, and that as a matter of law cannot be held to be correct. Mr. Powell has no mention of Mr. Strickland. There's no claim that he was intimidated. There's every indication that he was cooperative once he was approached by inmate Horton. This is nothing but buttressing and alibi defense. Further, it should be noted that the alibi defense in this case was almost comical and absolutely preposterous and was quickly rejected by the jury. The defense in this case was that the defendant and his would-be wife were picked up by another man, Mr. Powell, to drive to Moments, not Mooney, as claimed by Mr. Horton, for a wedding rehearsal. They have four children. After Mr. Powell picks up the defendant, his fiancée, and their four kids, they went to the defendant's girlfriend, Yolanda Jones's mother's house. They picked her up and her two kids. We now have ten people in a Chevy Chevette driving to Moments for a wedding rehearsal that apparently the defendant's mother and stepfather and the preacher and anybody who was standing up in that wedding didn't know about. So ten people drive down in a Chevy Chevette to Moments, Illinois, and the defendant didn't even know where his mother lived. So when they got to Moments, they had to call the stepfather to have him come and bring them to their mother's house, who had just been released from the hospital at 2 o'clock that afternoon after being in the hospital for a serious heart condition. The evidence also showed that, contrary to this alibi defense, that the person, Richard Bell, who owned the car used in the triple murder, testified that he talked to the defendant and lent defendant his car that morning and that the defendant returned the car that evening contrary to the alibi. And after speaking to the defendant, Mr. Bell was ordered by the defendant, a general in the El Rukens, to report his car stolen. This court has to consider Horton's affidavit as inadmissible. You can't consider it because he's not a witness. There's nothing in his affidavit that is admissible at a hearing in any way, shape, or form. It may be interesting, he should be commended for his work, but it's a big non-admissibility factor. Under 122.2, it's inadmissible, and this court should not consider it. Powell's purported statement is also not to be considered by this court. It doesn't serve the evidentiary mandates of 122.2. It's not in any way, shape, or form a freestanding claim of innocence. It cannot set forth a colorable claim of actual innocence, as it doesn't even attest to being a witness to a triple murder. Further, the defendant seems to be confusing the procedural defects of 122.1 with the evidentiary requirements set forth in 122.2. This court should not be confused in any way, shape, or form about the requirements. The defendant, as noted by the justices, does have a requirement. And setting forth a hearsay affidavit and an unnotarized affidavit that does nothing to claim he witnessed the crime, cannot, as a matter of law, allow this case to be sent to a second stage post-conviction hearing. This defendant has had his day in court. He's had many day in courts. He knows what he's doing, and he is playing this system, hoping that this court will bite at his argument that, trust me, I have the evidence, I'll let you know at the third stage hearing, is going to be good enough to proceed to a second stage hearing. This court should reject such an argument, as it is a categorical waste of judicial resources of this court and the trial courts down below. As a matter of fact, and as a matter of law, this court should affirm the summary dismissal of James Walker's third post-conviction petition. Just a few points. First of all, we're arguing that he's entitled to second stage proceedings, that leave to file should be granted, and he should get an attorney. So we're actually not saying it should immediately be advanced for a third stage evidentiary hearing. Secondly, the notarization issue is currently pending in the Illinois Supreme Court in People v. Allen, number 113135. But just for what it's worth, if you want to decide that, unnotarized evidence is still evidence. It's a defect that's easily cured by counsel at the second stage. And also, there's no requirement of admissibility at this stage. It's capable of being proven, not already proved. And it's not a nullity, even if it isn't an affidavit, where Section 122-2 of the Act states that a petition shall have attached thereto affidavits, records, or other evidence. Here, Mr. Powell wrote that he was giving this statement under penalty of perjury, so that satisfies the requirement of reliability. And regarding hearsay, as I argued in my reply, it's not hearsay because it's admissible under 115-10.1, where the statements were inconsistent with trial testimony. Both witnesses were subject to cross-examination, and the statements narrate something they saw and were written by them. But again, even if it was not admissible under 115-10.1, there's no requirement of admissibility at this stage. That's something that can be cured by counsel at the second stage. And again, if counsel's not able to cure that requirement, then it could be dismissed at the second stage. But here, we're just talking about leave to file, about getting in the gate. Secondly, the state has a lot to say about factual discrepancies in this case. Those discrepancies are something that show that there's a lot of questions in this case, and this evidence is newly discovered evidence of his innocence. So if proven, it is something that should be considered. So what the state's arguing is that he should never even get through the door, because as a pro se petitioner, he's not setting forth perfect facts, and he's not proving his innocence already. That's premature at this point. I mean, the state's attorney's representation of this evidence is showing that the state's attorney's family is probably different from this family. We can't say that that's inherently unbelievable. If people don't have five cars and they all squish into one car, we don't have a right to judge that at this point. I think that's all I have at this point. Does this court have any further questions? Thank you very much. Thank you very much for your fine briefs and great arguments. We will take it under advice.